**SALEM, Extrx., etc., Appellant, v. DeWITT-JENKINS
REALTY CO., Appellee.**

Ohio Appeals, Ninth District, Summit County.

No. 4268.   Decided May 21, 1952.

Gottwald, Hershey & Hatch, Akron, for appellant.
Wise, Roetzel, Maxon, Kelly & Andress, Akron, for appellee.

### OPINION

By HUNSICKER, PJ.

This is an appeal on questions of law from a judgment rendered on a verdict directed by the trial court for the defendant at the conclusion of the testimony in behalf of the plaintiff.

Toofek Salem, the plaintiff's decedent, herein called Salem, purchased a parcel of land at the corner of Wooster Avenue and Locust Street in the city of Akron, Summit County, Ohio, and immediately offered it for sale.  His deed for this land,

dated February 28, 1946, shows that it was transferred to him on the map of the auditor of Summit County, Ohio, on March 5, 1946, received for record by the recorder of Summit County on March 5, 1946, and recorded March 18, 1946. The description of such land is as follows:

"Situated in the City of Akron, County of Summit and State of Ohio, and known as being the westerly 105.1 feet, front and rear, of Lot Number Two Hundred Ninety-one (291) in the Town Plat of Akron, as surveyed and numbered by Joshua Henshaw, Surveyor, and recorded in Portage County Records, Book H, pages 18 to 20, inclusive, and now in the Records of Transcribed Plats of Summit County, Ohio, page 4."

On February 25, 1946, three days before Salem got a deed to the property, he gave to one Albert Frey an option to purchase the following described lands:

"Situated in the City of Akron, County of Summit and State of Ohio, and known as being the westerly 126 feet front and rear of lot number 291 of Part of South Akron Allotment, intending to convey a piece of land having a frontage of 82.5 feet on Locust street by 126 feet on Wooster Avenue, same being a rectangle 82.5 feet by 126 feet."

On April 1, 1946, six days after the option expired, Salem executed an agreement to sell to Albert Frey the following described premises:

"Situated in the City of Akron, County of Summit, and State of Ohio, and known as Lot No. (sic) Being the westerly 126 feet front and rear of lot No. 291 of Part of South Akron Allotment, intending to convey a piece of land having a frontage of 82.5' on Locust St. by 126' on Wooster Ave.. together with all the appurtenances and hereditaments, including lighting fixtures, chandeliers, window shades, screens, linoleums, thereunto belonging, but subject to any existing restrictions, as well as all legal highways."

All of the foregoing descriptions of lands purported to be the same property purchased by Salem and located at the northeast corner of Wooster Avenue and Locust Street in the city of Akron, Ohio.

Albert Frey also signed this agreement. Thereafter Salem presented to Albert Frey a warranty deed for premises located at the corner of Wooster Avenue and Locust Street, with the description of the lands as is contained in the deed which Salem received from the party from whom he purchased such lands. Albert Frey refused to accept such deed, and sued Salem for breach of contract. Frey secured a judgment against Salem, which, together with court costs and interest, amounted to $1288.34. Salem paid this judgment, and then brought an action against the appellee, a real estate broker, herein

called DeWitt, for the amount of such judgment, costs and interest, and, in addition thereto, the amount of $592.20. which he alleges he paid his attorneys in defending the action that Albert Frey had brought against him.

Albert Frey had contacted DeWitt prior to February 25, 1946. concerning the purchase of these premises at the corner of Wooster Avenue and Locust Street. DeWitt then went to Salem and discussed with him the desire of Albert Frey to buy this property. Salem told DeWitt that he did not then have his deed, but that he had been informed the property had a frontage of 126 feet on Wooster Avenue, but that DeWitt ought to check the records at the Court House. DeWitt and Frey looked at the property, and DeWitt thereafter prepared the purchase option to Frey dated February 25, 1946. Salem, without further inquiry, signed such option. DeWitt thereafter prepared the contract of purchase dated April 1, 1946, which Salem and Frey thereafter signed.

Salem says that the judgment Frey obtained was caused by the appellee, DeWitt, who "either purposely misrepresented to plaintiff's decedent the dimensions of the premises in question, or was grossly negligent and careless in not following Mr. Salem's instructions to check the dimensions of the lot at the Court House."

At the conclusion of the Salem case in chief, the trial court, upon motion, directed a verdict for DeWitt. From the judgment thereafter rendered on such verdict, Salem brings an appeal to this court on questions of law, saying that such judgment is manifestly against the weight of the evidence and is contrary to law.

There is no evidence of a misrepresentation purposely made by DeWitt to Salem as to the dimensions of the property herein. Salem first stated to DeWitt the dimensions, which were inserted in the option and the later agreement to purchase.

We do not have in the instant case the question of a real estate broker's right to a commission where such broker has procured a buyer ready, willing and able to purchase real estate, which an owner has offered for sale through the agency of such broker, and such buyer refuses to consummate the purchase because of a misrepresentation by the owner as to the quantity of real estate offered for sale.

We do have in the instant case the claim that the real estate broker, through negligence and failure to follow the instructions of his principal, inserted in the option to purchase and the later agreement of sale and purchase, an incorrect dimension of the property which the principal owned and sought to sell.

An examination of the exhibits herein shows that the option given on February 25, 1946, expired on March 25, 1946. The agreement of sale was executed on April 1, 1946, six days after the option to purchase had expired. This agreement was executed 26 days after Salem had secured a transfer on the auditor's tax map of the deed from his vendor.

Can Salem, under these circumstances, now be heard to say that it was the fault of DeWitt that caused the loss he suffered?

It is axiomatic that an agent, such as we have herein, shall exercise fidelity and good faith toward his principal in all matters that fall within the sphere of his employment, and that the agent execute his commission with skill, care and diligence. See: **1 O. Jur., Agency, Sec. 82, et seq., p. 758,** and authorities cited.

We think it is also equally clear that an agent may be liable for losses incurred by his principal through the agent's own negligence and failure to perform his duties properly.

In the instant case, Salem had knowledge of the property he sought to sell or should have had such knowledge, because, before he signed the agreement, he had the deed from his vendor transferred and recorded, and he was no longer bound by the option which he previously had given Frey. Salem by his own conduct was guilty of negligence, since he could have, by the exercise of ordinary care, when he executed the agreement of sale, protected himself as to the description and thereby avoided his subsequent loss. There is no testimony which indicates that Salem was prevented from reading the description in the deed he received from his vendor. In the exercise of ordinary care, Salem could have ascertained the extent and dimensions of the land he agreed to sell.

"The liability of the agent to the principal may be avoided, terminated, or reduced by a breach of contract by the principal, his **contributory fault,** or his failure to mitigate damages." (Emphasis ours.)

II Restatement of the Law of Agency, Chapter 13, Sec. 415.

See also: 3 C. J. S., Agency, Sec. 162 and authorities there cited.

It was the duty of Salem, under the facts herein, to know the nature and extent of the property that he agreed to sell. His failure, under these circumstances, to examine the deed after the option expired and before he executed the agreement of sale, constituted negligence on his part which directly caused his loss.

The judgment of the trial court is affirmed.

DOYLE, J, STEVENS, J, concur.