PETTIT et al., Appellants,

v.

HUGHES et al., Appellees.

[Cite as *Pettit v. Hughes,* 177 Ohio App.3d 344, 2008-Ohio-3780.]

Court of Appeals of Ohio,
Fifth District, Muskingum County.

No. CT2007–0048.

Decided July 28, 2008.

D. Joe Griffith, for appellants.

James Hughes, pro se.

Miles D. Fries, for appellee Zemba Brothers, Ltd.

Paul–Michael LaFayette and Michael J. Valentine, for appellee Findeiss Realty Company.

FARMER, Judge.

{¶ 1} Appellants, Richard and Barbara Pettit, hired Connie Shaeffer, a real estate agent associated with appellee Findeiss Realty Company, to represent their interests in the purchase of a historical home in Zanesville, Ohio, known as the "Rogge House." The seller of the home was appellee James Hughes. Hughes's real estate agent was Carol Goff.

{¶ 2} Prior to the closing of the sale, a septic inspection of the property for the benefit of appellants was performed by appellee Zemba Brothers, Ltd. Based upon the report provided by Zemba, Shaeffer informed appellants that they could go ahead and close the deal.

{¶ 3} After living on the property for a few weeks, appellants discovered that they were releasing raw waste into the Muskingum River.

{¶ 4} On February 8, 2005, appellants filed a complaint against appellees alleging various claims, including negligent misrepresentation, breach of contract, and recklessness. A jury trial commenced on July 10, 2007. At the conclusion of the case, the trial court granted a directed verdict to appellee Findeiss on appellants' claims of recklessness and punitive damages. The jury found in favor of appellees, finding that the doctrine of caveat emptor precluded recovery to appellants.

{¶ 5} Appellants filed an appeal, and this matter is now before this court for consideration. The assignments of error are as follows:

{¶ 6} I. "The trial court erred in instructing the jury that appellants Findeiss Realty Co. and Zemba Brothers, Ltd. qualified for the defense of caveat emptor."

{¶ 7} II. "The trial court erred in granting a directed verdict to defendant/appellee Findeiss Realty at (sic) to plaintiffs' claims for recklessness and punitive damages."

I

{¶ 8} Appellants claim that the trial court erred in giving the jury the "caveat emptor" instruction as to appellees Findeiss and Zemba. We disagree.

{¶ 9} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Martens* (1993), 90 Ohio App.3d 338, 629 N.E.2d 462. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. Jury instructions must be reviewed as a whole. *State v. Coleman* (1988), 37 Ohio

St.3d 286, 525 N.E.2d 792. Whether the jury instructions correctly state the law is a question of law, which we review de novo. *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 575 N.E.2d 828.

{¶ 10} In *Layman v. Binns* (1988), 35 Ohio St.3d 176, 519 N.E.2d 642, syllabus, the Supreme Court of Ohio explained the doctrine of caveat emptor as follows:

{¶ 11} "The doctrine of *caveat emptor* precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor. (*Traverse v. Long* [1956], 165 Ohio St. 249, 59 O.O. 325, 135 N.E.2d 256, approved and followed.)"

{¶ 12} The trial court gave the following instruction over appellants' objections:

{¶ 13} "Caveat emptor defense, the Defendants claim that Plaintiffs had a duty to investigate and were not justified in relying upon the representation or alleged failure to disclose. Where a person has the opportunity to investigate, inspect, inquire, and when the circumstances would cause a person of ordinary care to investigate, inspect, or inquire and he fails to do so, the element of justifiable reliance has not been proved and the Defendants cannot recover—or the Plaintiffs cannot recover. Excuse me.

{¶ 14} "If Plaintiffs investigate the facts represented and rely on this investigation and do not rely on facts represented, then the Plaintiffs are not entitled to recover.

{¶ 15} "If representations were made by the Defendants with an intention to deceive or mislead the Plaintiffs causing them to refrain from making an investigation, investigation and inquiry, which in the ordinary—in the use of ordinary care they would have made, there is no duty to investigate and the Plaintiffs may justifiably rely on the Defendants' representations.

{¶ 16} "If a person has a duty to speak, he must make a full and fair disclosure of the material facts. A partial disclosure is a concealment and may be fraud."

{¶ 17} We note that there are three defendants included in this general statement as to the applicability of the doctrine of caveat emptor. Appellants do not challenge this instruction as it applies to the seller, Hughes. The challenge is made against their real estate company, appellee Findeiss, and the sewer-system inspector, appellee Zemba.

{¶ 18} Jury interrogatory No. 1 addressed the issue of caveat emptor. In answering, the jury found that the doctrine shielded not only the seller, but the real estate agent and the sewer-system inspector as well. As a result, general verdicts were returned for appellee Zemba on appellants' negligent-representa-

tion claim and appellee Findeiss on appellants' negligent-representation and breach-of-contract claims.

{¶ 19} For the following reasons, we find that the general charge on caveat emptor was proper sub judice.

{¶ 20} In *Schmiedebusch v. Rako Realty, Inc.*, Delaware App. No. 04CAE8062, 2005-Ohio-4884, 2005 WL 2266701, ¶ 39–40, we discussed the availability of the complete defense of caveat emptor as it applies to a buyer and the buyer's real estate agent:

{¶ 21} "Thus, it is axiomatic that a real estate agent 'shall exercise fidelity and good faith toward his principal in all matters that fall within the sphere of his employment, and that the agent execute his commission with skill, care and diligence.' *Salem v. DeWitt–Jenkins Realty Co.* (1952), 65 Ohio Law Abs. 1, 4, 113 N.E.2d 918, 920; see, also, R.C. 4735.62. As noted by the Ohio Supreme Court, '[l]ike other professionals, a person holding a real estate license is held to a higher standard of competency and fairness than is a lay member of the public in the marketplace.' *Richard T. Kiko Agency, Inc. v. Ohio Dept. of Commerce, Div. of Real Estate* (1990), 48 Ohio St.3d 74, 76, 549 N.E.2d 509.

{¶ 22} "Because of the affirmative obligations arising from the fiduciary relationship between a real estate agent and his clients, the defense of caveat emptor does not apply when a real estate agent fails to disclose to his clients facts which were known or should have been known by him that are material to the transaction. See *Finomore v. Epstein* (1984), 18 Ohio App.3d 88, 90 [18 OBR 403], 481 N.E.2d 1193."

{¶ 23} As noted in *Finomore v. Epstein* (1984), 18 Ohio App.3d 88, 90, 18 OBR 403, 481 N.E.2d 1193, the doctrine of caveat emptor is precluded if fraud or fraudulent misrepresentation is present:

{¶ 24} "In property transactions, there is no right to rely on oral representations regarding the property transferred where the true facts are equally open to both parties. *Traverse v. Long* (1956), 165 Ohio St. 249, 252 [59 O.O. 325, 135 N.E.2d 256]; *Klott v. Associates Real Estate, supra* [ (1974), 41 Ohio App.2d 118, 70 O.O.2d 129, 322 N.E.2d 690]; *Ralston v. Grinder* (1966), 8 Ohio App.2d 208 [37 O.O.2d 213, 221 N.E.2d 602]. However, when there are latent defects or dangerous conditions not easily discoverable, coupled with misrepresentations or concealment, the doctrine of caveat emptor will not preclude recovery for fraud. *Miles v. Perpetual S. & L. Co.* (1979), 58 Ohio St.2d 97, 101 [12 O.O.3d 108, 388 N.E.2d 1367]. Also, when a fiduciary relationship exists, as between a realty agent and a client, the clients are entitled to rely upon the representations of the realty agent. *Foust v. Valleybrook Realty Co.* (1981), 4 Ohio App.3d 164 [4 OBR 264], 446 N.E.2d 1122; cf. *Walters v. First Natl. Bank of Newark, supra,* 69

Ohio St.2d 677 [23 O.O.3d 547, 433 N.E.2d 608] (fiduciary relationship between bank and customer with regard to loan processing and credit life insurance)."

{¶ 25} As further noted by this court in *Moore v. Daw* (August 20, 1996), Muskingum App. No. CT 95–20, 1996 WL 488853, if the findings of fact fail to establish fraud (i.e., termites discovered after a termite inspection cleared the property), the doctrine of caveat emptor may be applied:

{¶ 26} "We find the trial court was correct when it applied the doctrine of *caveat emptor.* Appellant could have further investigated the termite history of the residence or had further inspections conducted because he was put on notice the residence had previously been treated for termites. Appellant also had the opportunity to inspect the residence and did so on several occasions. Finally, we determined in appellant's first and second assignments of error that he could not establish a claim for fraud. Thus, it was appropriate for the trial court to apply the doctrine of *caveat emptor.*"

{¶ 27} Therefore, simply restated, if fraudulent representation or concealment is not proven, the doctrine of caveat emptor applies. In this case, the jury found that there was no fraudulent representation or misrepresentation or breach of contract as to both appellees Zemba and Findeiss. With this specific verdict, we find that the doctrine of caveat emptor applies sub judice. Admittedly, the trial court's instruction on the doctrine was not as clear as it could have been. However, the trial court's instructions in discussing the interrogatories made it very clear that the issues involving appellees centered on fraudulent misrepresentation.

{¶ 28} Upon review, we find that the trial court did not err in instructing the jury on the doctrine of caveat emptor.

{¶ 29} Assignment of error I is denied.

## II

{¶ 30} Appellants claim that the trial court erred in granting a directed verdict to appellee Findeiss on the issue of recklessness and punitive damages. We disagree.

{¶ 31} Specifically, in their brief at 11, appellants argue that there was "substantial competent evidence in the case supporting Appellants Pettits' claim for recklessness and punitive damages against Findeiss Realty Company that warranted the denial of Defendants' Motion for Directed Verdict."

{¶ 32} In *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284–285, 21 O.O.3d 177, 423 N.E.2d 467, the Supreme Court of Ohio established the test to be applied to a motion for a directed verdict and held the following:

{¶ 33} "The law in Ohio regarding directed verdicts is well formulated. In addition to Civ.R. 50(A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. *Durham v. Warner Elevator Mfg. Co.* (1956), 166 Ohio St. 31 [1 O.O.2d 181], 139 N.E.2d 10. Thus, 'if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. *Kellerman v. J.S. Durig Co.* (1964), 176 Ohio St. 320 [27 O.O.2d 241], 199 N.E.2d 562 * * *.' *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 115 [4 O.O.3d 243], 363 N.E.2d 367."

{¶ 34} The trial court granted the motion for directed verdict at the conclusion of the evidence, stating the following:

{¶ 35} "With regard to reckless conduct, the Court finds there is insufficient evidence to warrant that count being presented to the jury. The Court finds there is no evidence presented that the defendants or defendants knew exactly what was wrong with the property and, as such, completed to misrepresent that in a reckless and heedless manner or did so with a reckless indifference as to the rights and safety of others or was outrageous in this matter."

{¶ 36} In *Charles v. Cardington–Lincoln Local School Dist.* (August 19, 1996), Morrow App. No. 821, 1996 WL 488847, at *5, this court noted the following:

{¶ 37} "In *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, [559 N.E.2d 699, fn. 2.,] the Ohio Supreme Court adopted the definition of 'reckless' found in 2 Restatement of the Law 2d, Torts (1965) 587, Section 500 as follows:

{¶ 38} " 'The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.'

{¶ 39} " * * *

{¶ 40} "In that the term 'reckless' is often used interchangeably with the term 'wanton,' the definition of reckless set forth above applies equally to conduct characterized as 'wanton.' *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104, 559 N.E.2d 705."

{¶ 41} The gravamen of this assignment centers on the testimony of appellee Findeiss's agent, Shaeffer, and what she conveyed to Mrs. Pettit. Shaeffer testified that she read the report to Mrs. Pettit over the phone, and she knew that the property was not connected to either the city or county sewer system. After being informed of the Zemba report, appellants called and requested

Shaeffer to ask Hughes to put in a septic system. Hughes declined to do so. Both Goff, Hughes's real estate agent, and Hughes affirmed that prior to closing and after the Zemba report, appellants requested Hughes to put in a sewer system.

{¶ 42} Mrs. Pettit testified that Shaeffer told her that the sewer did not drain into the river, there was city sewer, and they were "good to go." She specifically denied that they requested Hughes to put in a septic system. On cross-examination, Mrs. Pettit's testimony was subjected to prior inconsistent statements as to whether Shaeffer ever said that there was city sewer.

{¶ 43} The unrefuted testimony consists of Shaeffer's assumptions regarding the Zemba report. Shaeffer believed that the diagram on the second page of the report, coupled with Zemba's use of the term "system," meant that there was a septic system on the property. Shaeffer also told appellants that they could get out of the contract.

{¶ 44} We find that such evidence, construed most favorably for appellants, supports the trial court's conclusion on the issue of recklessness. There may have been a showing of lack of understanding or evasiveness, but none of recklessness or malice. The issue of fraud remained for the jury to decide.

{¶ 45} Upon review, we find that the trial court did not err in granting the motion for directed verdict.

{¶ 46} Assignment of error II is denied.

{¶ 47} The judgment of the Court of Common Pleas of Muskingum County, Ohio is hereby affirmed.

Judgment affirmed.

GWIN, J., concurs separately.

HOFFMAN, P.J., concurs in part and dissents in part.

HOFFMAN, Presiding Judge, concurring in part and dissenting in part.

{¶ 48} I concur in the majority's disposition of appellants' first assignment of error as it relates to the seller, Hughes. However, I believe that caveat emptor does not apply to appellants' claims against appellees Findeiss Realty Company and Zemba Brothers Ltd., for the rationale set forth in this court's opinion in *Schmiedebusch v. Rako Realty, Inc.*, 2005-Ohio-4884, 2005 WL 2266701.[1] Therein, this court did not require fraud or fraudulent misrepresentation as a necessary prerequisite to overcoming the application of caveat emptor.

---

1. The majority opinion cites *Schmiedebusch* in paragraph 21–22 of its opinion.

Rather, we found that caveat emptor does not apply when the real estate agent fails to disclose to his or her clients any fact that was known or should have been known by the agent and that is material to the transaction.

{¶ 49} Having concluded that the trial court erred in giving the caveat emptor instruction as to Findeiss and Zemba, the next issue becomes whether appellants were prejudiced as a result.

{¶ 50} In interrogatory No. 8, the jury found that Zemba made no negligent representation to appellants. Appellants' claim against Zemba rests upon the statement in Zemba's report that the septic system was working fine when, in fact, Zemba could not locate the septic tank. The report never represented that the septic tank was found. After the lines were flushed, the system gave no indication that it was not working. Based upon the evidence, the jury was free to find that Zemba had made no negligent misrepresentation. Thus, I find that no prejudice accrued to appellants as a result of the erroneous instruction on caveat emptor as it relates to Zemba.

{¶ 51} However, I do find that prejudice resulted to appellants as a result of the erroneous instruction as to Findeiss. I do so despite the jury's response to interrogatory No. 12, wherein they found that appellants were 60% comparatively negligent. Having been misinstructed about appellants' duty to investigate with regard to the caveat emptor defense, I find that the jury's response to interrogatory No. 12 is necessarily tainted as a result. I agree with appellants' assertion that the law does not require appellants to hire inspectors to inspect their inspectors.

{¶ 52} Accordingly, I would sustain appellants' first assignment of error as it relates to Findeiss and overrule it as it applies to Zemba and Hughes.

{¶ 53} I also respectfully dissent from the majority's disposition of appellants' second assignment of error. I acknowledge that there is ample testimony to suggest that Shaeffer did not act recklessly or wantonly, let alone with actual malice. There is also evidence that appellants may not have detrimentally relied on Shaeffer's representations. Nevertheless, there exists sufficient testimony that, if believed, could support a claim for punitive damages. Specifically, Shaeffer admitted that she was required to be familiar with the Muskingum County Health Department Regulations concerning septic systems and she had to make sure that the inspection met those regulations, including locating a septic tank on the property. Shaeffer stated in her deposition that she knew there was no septic system on the property because Zemba stated in their report that the septic tank could not be located. Despite knowing this, Shaeffer told Mrs. Pettit that the sewage went into the city sewer and that appellants were "good to go," because the inspection passed. Although at trial Shaeffer denied most of the

statements that Mrs. Pettit attributed to her, I believe that this credibility call lies with the jury. It is undisputed that the sewage did not go into the city sewer but rather into the river. It should be left to a jury to decide whether Shaeffer made the statements attributed to her by Mrs. Pettit and if the statements are found to have been made, whether those statements were made recklessly and/or wantonly.

GWIN, Judge, concurring.

{¶ 54} I agree with the outcome reached by the majority. I would find, however, that the "caveat emptor" defense cannot be raised by Findeiss Realty or Zemba. I find that the giving of the instruction was harmless because, as the majority states, the jury rendered a verdict in favor of both defendants on appellants' negligent-misrepresentation claim. The jury also found no breach of contract by Findeiss.

{¶ 55} The defendants presented testimony from Schaeffer, appellant's agent from Findeiss. She testified that she asked the seller, Hughes, about the septic tank. Schaeffer testified that Hughes informed her that he had no idea where the septic tank was. He had owned the property for 18 to 20 years and had bought it on land contract without an inspection. Hughes also advised her that he did not believe the house was on the city sewer because he had never been billed for that.

{¶ 56} Schaeffer testified that appellants had inquired whether Hughes would put in a new septic system, but Hughes refused, pointing out that their offer was $20,000 lower than his asking price. Schaeffer testified that she told Mrs. Pettit they didn't have to buy the property, and Pettit said they wanted the property no matter what.

{¶ 57} Schaeffer and appellants discussed the system in preparing the contingencies in their purchase offer: "When I come down to the—or the septic inspection, they declined to have it because they didn't know what was there; and they didn't want to arise any questions from anyone as to what was there. And [Mrs. Pettit's] remark was 'I want this house so, you know, I don't think that's necessary.'" The only contingency in appellants' final offer was regarding the sale of their former home.

{¶ 58} The jury could believe the above testimony and find that Findeiss did not breach any duty to appellants. Zemba's report that it could not locate the septic tank actually underscored Hughes's statement that he did not know where it was. The jury found that Zemba did not make any reckless or negligent representations to appellants, and the evidence supports this finding.

{¶ 59} The dissent notes that even though the jury's verdicts found no negligence on the part of any defendant, the response to interrogatory No. 12 ascribes percentages of negligence to all parties.

{¶ 60} Any argument regarding inconsistent interrogatories must be raised while the jury is still impaneled and the court has the full range of choices under Civ.R. 49 before it. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001. The record does not indicate that appellants raised the issue before the trial court, and they assigned no error specifically raising the issue before us.

{¶ 61} Regardless, the jury found appellants 60% negligent, which would prohibit their recovery.

{¶ 62} While I find that the court erred in not limiting the caveat emptor instruction to the seller, I also find that it was cured by the verdict. See *Beers v. Mally* (August 7, 1995), Morrow App. No. CA–810, 1995 WL 498960.