[Cite as *Grafton v. Bescan Family Trust*, 2018-Ohio-3933.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

VILLAGE OF GRAFTON

    Appellee/Cross-Appellant

    v.

LEONARD A. BESCAN FAMILY TRUST, et al.

    Appellants/Cross-Appellees

C.A. No.    17CA011144

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    16CV188869

DECISION AND JOURNAL ENTRY

Dated: September 28, 2018

CALLAHAN, Judge.

{¶1}    Alan Bescan, the Leonard A. Bescan Family Trust, and other heirs of Leonard A. Bescan and his sisters ("the Bescan Family") have appealed and the village of Grafton has cross-appealed from declaratory judgments of the Lorain County Court of Common Pleas. The judgments at issue declared that Grafton was prohibited by restrictive deed covenants from building a water tower on certain property for the remainder of a twenty-year period, but that the property did not revert to the Bescan Family, nor was the Bescan Family entitled to attorney fees or costs from Grafton in this litigation. This Court affirms.

I.

{¶2}    The dispute in this case involves property located in Grafton, Ohio ("the Property") and a 20-year deed restriction placed on the Property at the time of its sale and transfer of title to the village of Grafton in January 1999. Prior to its sale, the Property consisted

of three separate parcels owned by the Leonard A. Bescan Family Trust and Leonard Bescan's sisters ("the Prior Owners") and was located adjacent to Grafton's then-existing Reservoir Park.

{¶3}   The Prior Owners sold the Property to Grafton pursuant to a written agreement and the deeds for each parcel transferred on January 29, 1999.  Because the Prior Owners were concerned that the Property might be used for commercial or high-density housing development, each deed included a twenty-year restrictive covenant on the use of the Property.  In relevant part, the deeds provided:

1.    The [Property] shall be used only for recreational park land to be enjoyed by the public * * * for a period of not less than twenty (20) years commencing on the date of recording of this deed with the Lorain County, Ohio Recorder.  No part of [the Property] shall be used for residential, commercial or industrial developmental purposes or otherwise during such twenty-year period.

2.    These restrictions shall run with the land and be binding on all parties and on all persons or entities claiming under the Grantee.

3.    If the Grantee, its successors or assigns, shall violate or attempt to violate any of the restrictions herein, title to [the Property] shall revert to Grantor, and it shall be lawful for Grantor * * * to pursue any proceedings * * * against any person or entity violating or attempting to violate any such restriction * * *.  The cost of pursuing any such violator and resolving any such violation, whether or not successful on the part of the Grantor, including without limitation reasonable attorney fees and court costs, shall be borne by the Grantee[.]

{¶4}   After purchasing the Property, Grafton used it to expand Reservoir Park.  As part of its expansion of the park onto the Property, Grafton made over $500,000 in improvements over the next several years, including the construction of recreational ball fields, bleachers, a concession stand, restrooms, sidewalks, pavilions, a roadway, and a parking lot.  Grafton also added utility lines that supplied electricity, water, and sewer service to the facilities at Reservoir Park.

{¶5}   After the sale of the Property to Grafton, Leonard Bescan retained his family home on a separate parcel adjacent to the Property, where he lived until his death in 2011.  Alan Bescan ultimately became the owner of the separate parcel with the family home after Leonard's death.

{¶6}   During 2013, apparently unaware of the deed restrictions that had been recorded several years earlier, Grafton began considering part of the Property as the site for a new water tower.  The proposed tower would replace and double the capacity of the village's then-existing water tower and would supply water to the entire village.  After Alan Bescan became aware of Grafton's water tower plans, he voiced his objection at a public meeting of the village council during December 2015.  Grafton considered other sites on which to locate the water tower, but it ultimately concluded that the proposed site on the Property was the most cost-effective alternative.

{¶7}   On March 1, 2016, Grafton filed a complaint against the Bescan Family, seeking a declaratory judgment that Grafton was not prohibited by the sales agreement or the deed restrictions from building the proposed water tower on the Property.  The Bescan Family filed an answer and counterclaims.  It sought declarations that the construction of the water tower would violate the deed restrictions and that Grafton had already violated or attempted to violate the restrictions by planning to build the tower.  Pursuant to the language of the deed restrictions, if Grafton had violated or attempted to violate the deed restrictions, the Property reverted to the Bescan Family and Grafton was responsible for the family's attorney fees and costs in this litigation.

{¶8}   Following an evidentiary hearing, the trial court issued a declaratory judgment that the deed restrictions prohibited Grafton from building the proposed water tower on the

Property during the remainder of the twenty-year restriction period. The trial court later denied the Bescan Family's motion for summary judgment on the issues of reversion and attorney fees and ultimately entered a declaratory judgment on those issues. The trial court concluded that Grafton had not violated or attempted to violate the deed restrictions by planning to build the water tower. Therefore, it declared that the Property did not revert to the Bescan Family, nor was the family entitled to recover costs and attorney fees from Grafton.

{¶9} The Bescan family appealed, raising two assignments of error. Grafton filed a cross-appeal, raising two cross-assignments of error. We will address Grafton's cross-assignments of error first because they are potentially dispositive of the entire appeal.

II.

**CROSS-ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN DETERMINING THAT GRAFTON'S INTENTION TO CONSTRUCT A WATER TOWER [ON THE PROPERTY] WOULD VIOLATE ANY DEED RESTRICTIONS[.]

**CROSS-ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN NOT FINDING THAT THE EQUITABLE DEFENSE OF WAIVER PRECLUDED THE ENFORCEMENT OF DEED RESTRICTIONS WHERE THE PROPERTY'S PREVIOUS OWNERS DID NOT OBJECT TO OTHER IMPROVEMENTS TO THE PROPERTY[.]

{¶10} This Court will address Grafton's two cross-assignments of error together because they are intertwined. Its first cross-assignment of error is that the trial court erred in concluding that constructing and operating the proposed water tower on the Property during the twenty-year restriction period would violate the deed restrictions. Its second cross-assignment of error is that, even if building the water tower on the Property would violate the deed restrictions, the Bescan Family had waived its right to enforce the restrictions because it had failed to object to prior improvements on the Property.

{¶11} Grafton has initially argued that it was legally bound by restrictions in the Property's sales agreement, but not the deeds. It does not dispute, however, that it accepted the transfer of the deeds without qualification, and the deed restrictions were not collateral to or independent of the main purpose of the sale. *See* 37 *Robinwood Assocs. v. Health Industries, Inc.*, 47 Ohio App.3d 156, 157-158 (10th Dist.1988). Consequently, the sales agreement merged into the recorded deeds and Grafton's arguments based solely on the sales agreement have no merit. *Id.* The trial court properly focused on the language of the deed restrictions.

{¶12} The issue in this declaratory judgment action is a matter of construing the plain language of the deed restrictions. The trial court declared that building and operating the proposed water tower on the Property would violate the language of the deed restrictions that required the Property to "be used only for recreational park land to be enjoyed by the public" during the twenty-year restriction period and that no part of the Property "shall be used for residential, commercial or industrial developmental purposes or otherwise[.]"

{¶13} The trial court focused on the plain language of the deed restrictions and concluded that a water tower to supply water to the entire community would violate the restrictions because it would not constitute a "recreational park" use of the land. Because the deeds do not define "recreational" or "park," this Court must look to the ordinary meaning of those terms and construe them as a matter of law. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraphs one and two of the syllabus.

{¶14} The word "recreational" is defined as "of, relating to, or characteristic of recreation[.]" *Merriam-Webster's Collegiate Dictionary* 1040 (11th Ed.2004). "[R]ecreation" is defined as "a means of refreshment or diversion: HOBBY[.]" (Emphasis sic.) *Id.* Similarly, a "park" is "a piece of ground in or near a city or town kept for ornament or recreation" or "an area

maintained in its natural state as a public property[.]" *Id.* at 901. Simply put, "recreational park" use of the Property would involve leisure activities to be enjoyed by the public.

{¶15} Notably, Grafton has never explained how the proposed water tower would fall within the plain and unambiguous meaning of a "recreational park" use of the Property. Instead, it has focused its arguments on the village's need for a new water tower, the cost effectiveness of building it on the Property, and the fact that the water tower would not interfere with other recreational uses of the Property. Although Grafton also argues that the water tower would supply water to Reservoir Park, the use of the water tower would not be limited to supplying water to the park. Instead, it would supply water to the entire village. None of Grafton's arguments support its implicit positon that the proposed water tower would constitute a "recreational park" use of the Property.

{¶16} Alternatively, Grafton argues that the Bescan Family has waived its right to enforce the deed restrictions because it has failed to object to prior violations by the village. In an attempt to demonstrate that it had been violating the deed restrictions for many years, Grafton points to other improvements that it made after purchasing the Property. Those improvements include the construction of baseball fields, sidewalks, a roadway, a parking lot, restrooms, and the addition of water, sewer, and electric service on the Property. The facts are undisputed, however, that all of those improvements have been used solely for not-for-profit, leisure purposes open for public use at Reservoir Park. Because Grafton has failed to demonstrate any error in the trial court's legal conclusion that the construction of the proposed water tower would violate the deed restrictions, but that Grafton's prior improvements to the Property did not, Grafton's cross-assignments of error are overruled.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN DENYING [THE BESCAN FAMILY'S] MOTION FOR ATTORNEY FEES.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN DENYING [THE BESCAN FAMILY'S] MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIMS AND MOTION FOR REVERSION.

{¶17} Because the Bescan Family's assignments of error are both premised on its argument that Grafton attempted to violate the deed restrictions, they will be addressed together. The Bescan Family sought declarations that it was entitled to attorney fees and costs and to reversion of the Property based on the following portion of the deed covenants:

> 3.      If the Grantee, its successors or assigns, shall violate or *attempt to violate* any of the restrictions herein, title to [the Property] shall revert to Grantor, and it shall be lawful for  Grantor * * * to pursue any proceedings * * * against any person or entity violating or *attempting to violate* any such restriction * * *.   The cost of pursuing any such violator and resolving any such violation, whether or not successful on the part of the Grantor, including without limitation reasonable attorney fees and court costs, shall be borne by the Grantee[.] (Emphasis added.)

{¶18} The trial court found that the Property did not revert to the Bescan Family and they were not entitled to costs or attorney fees because Grafton did not actually violate or "attempt to violate" the deed restrictions.  The Bescan Family has not demonstrated that Grafton actually violated the restriction, but argues that Grafton did "attempt to violate" the restriction through its plans to build the water tower.  Again, the term "attempt to violate" is not defined in the deeds, so we must construe "attempt" according to its common usage.  *See Alexander*, 53 Ohio St.2d 241 at paragraph two of the syllabus.

{¶19} Although the trial court focused on whether Grafton had intended to violate the deed restriction, the only question is whether Grafton's actions constituted an "attempt" to build and operate the water tower on the Property, which would have constituted a violation of the

deed restrictions if completed during the 20-year restriction period. "[A]ttempt" is defined as "to make an effort to do, accomplish, solve, or effect" or "an unsuccessful effort[.]" *Merriam-Webster's Collegiate Dictionary* 79 (11th Ed.2004). "ATTEMPT stresses the initiation or beginning of an effort." (Emphasis sic.) *Id.*

{¶20} In support of its claim that Grafton had made an "attempt" to violate the deed restriction, the Bescan Family pointed to evidence that Grafton had discussed building a water tower on the Property, applied for funding, and that it surveyed the Property and did some core drilling to determine whether the proposed location would be suitable for a water tower. Although the Bescan Family argues on appeal that Grafton had taken additional steps toward building and operating the water tower, there is no evidence in the record to support their argument.

{¶21} In opposition to The Bescan Family's request for reversion and attorney fees, Grafton submitted evidence that the village council was merely considering the project when Alan Bescan voiced his objection and drew council's attention to the deed restrictions. It presented evidence that it had not yet finalized the design of the water tower, obtained the necessary funding, hired a construction company, or had the matter approved by the village council. At that point in time, the twenty-year deed restrictions would expire in approximately three years. Grafton explored other locations, halted further action on the Property, and sought a declaratory judgment from the trial court about whether a water tower would violate the deed restrictions. Grafton argued that "[m]any years of planning and preparation would be expected" before it would be prepared to break ground and begin to build the water tower. In other words, Grafton presented evidence that it was still in the process of planning to build a water tower.

**{¶22}** A "plan" is defined as "a method devised for making or doing something or achieving an end." Merriam-Webster's Collegiate Dictionary 947 (11th Ed.2004). It "implies [a] mental formulation" of accomplishing a goal, as opposed to an actual effort to do so. *Id*. The Bescan Family attaches significance to Grafton surveying and core drilling at the Property and suggests that the testing was the last step before the actual building of the water tower. In fact, the record reveals that the testing of the Property site was part of the planning process to determine whether it was feasible to build a water tower there. Because the testing confirmed that the Property was a viable location for the water tower, Grafton continued to focus its plans on that site. Had the survey and/or core sampling revealed that the Property was not a suitable location, Grafton would have focused its plans elsewhere.

**{¶23}** This Court can only conclude that Grafton's actions of planning to build a water tower during the restriction period that will expire on January 29, 2019 was activity that fell short of an actual "attempt" to accomplish the end result. Consequently, the trial court did not err in declaring that Grafton had not violated or attempted to violate the deed restrictions by planning or considering a possible future action of building a water tower on the Property. Because the Bescan Family failed to establish a violation or attempted violation, the deed provision regarding reversion and attorney fees did not apply. The assignments of error of the Bescan Family are overruled.

III.

**{¶24}** The assignments of error and cross-assignments of error are overruled. The declaratory judgments of the Lorain County Court of Common Pleas are affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to the parties equally.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

MATTHEW A. DOOLEY and STEPHEN M. BOSAK, Attorneys at Law, for Appellants/Cross-Appellees.

RICHARD G. LILLIE nad GRETCHEN A. HOLDERMAN, Attorneys at Law, for Appellee/Cross-Appellant.